UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRITTANY CANO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-16-392 |
| | § | |
| DEPUTY VICKERY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff Brittany Cano brings this civil rights case pursuant to 42 U.S.C. § 1983 for alleged violations of her First, Fourth, and Fourteenth Amendment rights arising from her February 16, 2014 arrest. Pending are cross motions for summary judgment filed by Plaintiff Brittany Cano [Doc. No. 23] and Defendants Harris County, Deputy Jeffery Vickery, and Deputy Ben Katrib [Doc. No. 22]. The Court has carefully considered the pleadings, motions, responses, evidence in the record, and applicable law, and concludes for the reasons that follow that the Defendants are entitled to summary judgment.

### I.  BACKGROUND

On the evening of February 15, 2014, Plaintiff Brittany Cano ("Cano") entered the Red River Dance Hall and Saloon ("Red River") with her boyfriend and two cousins to celebrate their birthdays.[1] Cano alleges that she was the designated driver for the group and started a tab at the bar by ordering two Sprites.[2] Around 1:45 or 1:50 a.m. on February 16, 2014, Red River turned

---

[1] Doc. No. 1, ("Complaint") ¶ 10.
[2] *Id.*

on the lights and announced that they were closed.[3]  Around that same time, Cano tried to order

another Sprite before she drove back to her house, but the bartender told her that she had just

closed the register.[4]  As Cano turned toward her cousins, she claims that Defendant Deputy

Jeffrey Vickery ("Vickery"), a uniformed off-duty Harris County Sheriff's Deputy who was

working a second job as a bouncer at Red River, shined his bright flashlight directly in Cano's

eyes, and she raised her hand to cover her eyes.[5]  Vickery told Cano to put her hands down and

then told her to leave the premises, stating, "The bar is closed, so leave."[6]  Instead of leaving,

Cano said, "It's only 1:45 a.m. and the bartender has not announced 'last call.'"[7] Cano alleges

that people were still playing music, dancing, and ordering from other bars.[8]  Cano alleges that

Vickery said, "Get the f*uck out.  I told you it's time to leave, so it's time to leave."[9]  Cano

claims that she said, "Fine," but then continued to give reasons why she should not have to

comply right away, stating, "Can I close my tab at least?"[10]  When Vickery asked Cano if she had

a tab open, Cano said, "No, I only asked you because I felt like it.  Obviously I have a tab open

or I wouldn't have asked."[11]

At Cano's response, Vickery allegedly exploded in anger and again told her to leave.[12]

By that time, Cano's then-boyfriend (now husband), Joffre Cross ("Cross"), had returned to the

---

[3] Declaration of Joffre J. Cross III ("Cross Decl."), [Doc. No. 23-3] ¶ 1; Declaration of Sarah Wilson ("Wilson Decl."), [Doc. No. 23-4] ¶ 1; Declaration of Trina Searcy ("Searcy Decl."), [Doc. No. 23-5] ¶ 1.
[4] Complaint ¶ 11.
[5] *Id.* ¶ 12.
[6] *Id.*
[7] *Id.* ¶ 13.
[8] *Id.*
[9] *Id.* ¶ 14 (asterisk in original).
[10] *Id.*
[11] *Id.* ¶ 15.
[12] *Id.* ¶ 16.  The parties dispute the manner in which Vickery instructed Cano to leave the bar.  Cano characterizes the exchange as Vickery using profanity and "screaming" at her to leave the bar.  Vickery testified that he never used profanity and asked her several times to leave.  Both accounts agree, though, that when Vickery told Cano to leave, Cano gave reasons why she should not have to leave and did not leave the first three times she was told to do so and after Red River had turned on the lights and

bar after attempting to use the facilities when the lights were turned on, but was not allowed to enter the restroom because Red River was closed.[13]  When Cross saw Vickery telling Cano to leave "in an extremely unprofessional manner," he grabbed Cano by the arm and started to lead her to the door to avoid a further issue.[14]  According to Cano, her cousin then asked if she was ok, and Cano said, "Yeah, I'm fine; that guy is just a douche bag."[15]  Cano claims that Vickery heard the "douche bag" remark and followed Cano and her boyfriend and yelled at the top of his lungs, "What did you call me? What did you say about me? Did you just call me a douche bag? Why don't you say it to my face?"[16]  Cano alleges that she stopped when she was halfway across the room towards the door, turned around, and said, "Yeah, I did, you need to calm down; there's no reason why you need to be treating me like this; I didn't do anything to you; chill out!"[17]

Cano alleges that Vickery waved to Ben Katrib ("Katrib"), another off-duty uniformed Harris County Sheriff's Deputy working as a bouncer, and said to Cano, "Turn around and put your hands behind your back because you are under arrest."[18]  Katrib handcuffed Cano, led her out of the bar, and called another deputy, John Doe 1, who arrived with a sheriff's vehicle.[19] Cano was placed in the back of a sheriff's vehicle while Cross pleaded with the deputies to let her go.[20]  Cano alleges that Katrib pulled Cano out of the vehicle and told her that she owed Deputy Vickery an apology.[21]

---

announced that the bar was closed.  Whether Vickery used profanity and screamed is immaterial to the question of whether Cano refused to leave when she was told to do so by Red River and one of its agents.
[13] Cross Decl., [Doc. No. 23-3] ¶¶ 1-2.
[14] *Id.* ¶ 3.
[15] Complaint ¶ 16.
[16] *Id.* ¶ 17.
[17] *Id.*
[18] *Id.* ¶ 18.
[19] *Id.* ¶ 19.
[20] *Id.*
[21] *Id.*

Cano recounts that she refused to apologize and instead said, "You can take that apology and shove it. I did not do anything wrong. This is ridiculous. That guy is on a power trip because he has a badge."[22] Cano alleges that Officer Doe 1 then pushed her back into the vehicle.[23] Cano claims that she was not initially informed of the charges or read her Fifth Amendment rights, but was later informed that she was under arrest for criminal trespass.[24] She alleges that she was in tight handcuffs for thirty minutes and that she had to spend 24 hours in jail in downtown Houston in deplorable conditions and with known drug dealers, users, and prostitutes.[25] She also claims that the charge was eventually dismissed on August 18, 2014, but remains on her criminal record.[26]

Cano brings claims against Vickery, Katrib, Doe Deputies, and Harris County for violations of her First, Fourth, and Fourteenth Amendment rights.[27] She claims that Harris County's custom or practice to allow its deputies to work second jobs as bouncers at bars makes it easy for them to violate the constitutional rights of the patrons under the color of law and that Harris County failed to train its deputies regarding First, Fourth, and Fourteenth Amendment protections.[28] Cano seeks general damages of $100,000; special, compensatory, emotional, and punitive damages; attorney's fees; and costs.[29] Cano moves for summary judgment, submitting her own declaration along with declarations from Cross and her cousins, Sarah Wilson and Trina Searcy.[30]

---

[22] *Id.* ¶ 20.
[23] *Id.* ¶ 21.
[24] *Id.*
[25] *Id.*
[26] *Id.* ¶ 22.
[27] *Id.* ¶¶ 23-39.
[28] *Id.* ¶¶ 30-39.
[29] *Id.* at Prayer.
[30] [Doc. No. 23].

Defendants also move for summary judgment, providing affidavits of Vickery, Katrib, and the expert testimony of Harris County Sheriff's Office Captain Jay Coons ("Coons").[31] Defendants also produce, as uncontroverted summary judgment evidence, a written apology from Cano expressing regret for her actions the night of the arrest and apologizing for acting poorly and using abusive language.[32] Defendants contend that Cano has not raised a fact issue on her claims and that they fail as a matter of law because they had probable cause to arrest her for criminal trespass. Harris County contends that Cano does not raise a fact issue on any violation of her constitutional rights or that it had a policy, practice, or custom that was the moving force that caused any such violation. Vickery and Katrib also assert their entitlement to qualified immunity, contending that they did not violate any of Cano's clearly established constitutional rights and that their actions were objectively reasonable under the totality of the circumstances.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."

---

[31] [Doc. No. 22] and attachments thereto.
[32] Cano Letter to Vickery, [Doc. No. 22-2 at 12].

*Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

"On cross-motions for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) (citing *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir.1994)). "Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## B.    Qualified Immunity

Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). When an off-duty peace officer sees a crime being committed, he becomes an on-duty peace officer and may assert qualified immunity for his actions in response to that crime. *See Legrand v. Gillman*, 576 F. App'x 334, 335 n.1 (5th Cir. 2014) (citing *Moore v. Wal-Mart Stores*, 62 F.3d 394, 1995 WL 449901, *2 (5th Cir. 1995)).

The United States Supreme Court recently reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 551-52 (2017) (quoting *al-Kidd*, 563 U.S. at 742); *see also City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774, n. 3 (2015) (noting several of the Supreme Court's reversals on qualified immunity and collecting cases). Indeed, "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (citation omitted). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to negate the defense once it is properly raised. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Bazan ex rel. Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001)).

## III. DISCUSSION

### A. Fourth and Fourteenth Amendment Claims Against Vickery and Katrib

The Fourth Amendment requires that a warrantless arrest by an officer be supported by probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted). Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude

that the suspect had committed or was committing an offense.'" *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–656 (5th Cir. 2004) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). Probable cause is not a high bar. *Wesby*, 138 S. Ct. at 586. Because probable cause is a wholly objective standard, viewed from the perspective of a reasonable officer, an arresting officer's subjective motivation in making the arrest is irrelevant. *Devenpeck*, 543 U.S. at 153 (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996); *Arkansas v. Sullivan*, 532 U.S. 769 (2001)).

In Texas, a person commits the offense of criminal trespass if she "enters or remains on or in property of another without effective consent or [s]he enters or remains in a building of another without effective consent and [s]he (1) had notice that the entry was forbidden or (2) received notice to depart but failed to do so." *Summerville v. Allied Barton Sec. Servs.*, 248 S.W.3d 333, 338 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing Tex. Penal Code Ann. §30.05(a) (Vernon Supp. 2006); *see also Wilson v. State*, 504 S.W.3d 337, 345 (Tex. App.— Beaumont 2016, pet. ref'd) ("[T]he statute requires the State to prove that the defendant was warned by someone with the authority to do so that he could no longer enter the owner's property, a standard that is easily understood by ordinary persons."). "Notice" is defined to include an oral communication "by the owner or someone with apparent authority to act for the owner." Tex. Penal Code § 30.05(b)(2).

Here, the parties each submit sworn declarations or affidavits regarding the February 16, 2014 incident at issue in this case, offering different versions of the events recounted above. According to Cano and the members of her party, Vickery, a uniformed deputy working as a bouncer at Red River, approached her, shined a bright light in her face and screamed at her to leave, using profanity and being extremely rude. According to the Defendants, Vickery calmly

and repeatedly asked Cano to leave and did not use profanity or scream at her, but Cano used abusive language, acted poorly, and refused to leave. When deciding a motion summary judgment filed by the Defendants, the evidence is viewed in the light most favorable to Cano as the non-movant. *See Ford Motor Co.*, 264 F.3d at 498; *Brooks v City of W. Point*, 639 F. App'x 986, 989 (5th Cir. 2016) (noting that the non-movant's disputed evidence must be credited on a motion for summary judgment).

With this standard in mind, Cano's own account of the incident in her pleadings reflects that Vickery told Cano to leave at least three times before she was arrested. Cano's evidence establishes that the lights were turned on around 1:45 a.m. and the bar announced that it was closed.[33] Cano's own account also reflects that, each time she was told to leave, she had some reason, argument, or remark as to why she could not, should not, or would not comply right away. Cano acknowledges that she stopped and turned around when she was about halfway to the door and further initiated a verbal exchange (her fourth, according to her pleadings) with Vickery, after having been told at least three times to leave the premises. All parties also agree that Cano was arrested and charged with criminal trespass and was transported to the Harris County Jail, where she remained for approximately one day. The pleadings disclose that the charges were eventually dismissed on August 18, 2014 but remain on Cano's record. The uncontroverted evidence also shows that the same day Cano obtained the dismissal of the charges, she submitted an apology letter to Vickery for her actions on the night in question, acknowledging that, "when the place announced that it was closing time, I reacted poorly and used very abusive language toward [Vickery]" and that she was "so sorry for [her] actions."[34]

---

[33] Cross Decl., [Doc. No. 23-3] ¶ 1; Wilson Decl., [Doc. No. 23-4] ¶ 1; Searcy Decl., [Doc. No. 23-5] ¶ 1.
[34] Cano Letter to Deputy Vickery, [Doc. No. 22-2 at 12]. Cano does not dispute that she wrote the letter, challenge its authenticity or admissibility as evidence, or contest that it was a condition of the dismissal of her criminal case.

The evidence from both parties concurs that, in the Defendant-deputies' presence or within their view, Vickery repeatedly told Cano to leave (rudely or not), and in response Cano argued with him or gave him excuses why she should not have to leave right away. At the time of the arrest, the facts and circumstances within the Defendant-deputies' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person to believe that Cano had committed or was committing the offense of criminal trespass. *See Bodzin v. City of Dallas,* 768 F.2d 722, 724–26 (5th Cir. 1985) (holding that police officers had probable cause to arrest plaintiff for criminal trespass under § 30.05(a) when they observed him on a location that the manager said was private property and heard plaintiff refuse to leave after manager had told him he was not welcome, even though the land was later determined to be public and the police officers did not observe the manager ask plaintiff to leave). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001).

Cano does not raise a fact issue that Vickery or Katrib lacked probable cause to arrest her for criminal trespass, and, therefore, she does not show that the arrest was unlawful. *See Bodzin,* 768 F.2d at 724 (holding that a plaintiff claiming a Fourth Amendment violation must show that the arresting officers lacked probable cause for the arrest). Additionally, to the extent that Cano complains that the handcuffs were too tight, she similarly fails to state a viable Fourth Amendment claim. *See Tarver v. City of Edna,* 410 F.3d 745, 753-54 (5th Cir. 2005) (holding that a claim that handcuffs were too tight stated a *de minimis* injury that did not amount to excessive force). Because Cano fails to raise a fact issue on probable cause for the arrest or on excessive force, Vickery and Katrib (and John Doe Deputies) are entitled to summary judgment

on Cano's Fourth and Fourteenth Amendment claims.

Moreover, Cano does not meet her burden to overcome Vickery's or Katrib's assertions of qualified immunity on her Fourth and Fourteenth Amendment claims. As discussed above, Cano does not raise a fact issue that her Fourth or Fourteenth Amendment rights were violated; thus, Vickery and Katrib are entitled to qualified immunity. *See al-Kidd*, 563 U.S. at 735 (stating that a plaintiff must show that an official violated a statutory or constitutional right to overcome qualified immunity).

Alternatively, even if Vickery or Katrib were mistaken in their belief that they had probable cause to arrest her, Cano does not raise a fact issue that that belief was objectively unreasonable. When defendant officials assert the defense of qualified immunity in a false arrest case, "the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis*, 601 F.3d 393, 401 (5th Cir. 2010) (citations omitted). "[L]aw enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to [qualified] immunity." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) (quotation marks and citation omitted). Cano does not show that no reasonable officer could have believed that there was probable cause for an arrest for criminal trespass based on the undisputed facts reflected in Cano's evidence. Further, Cano does not controvert Defendants' expert testimony by Harris County Sheriff's Office District Five Commander Jay O. Coons, Ph.D. that, in his opinion, because "multiple entreaties to Plaintiff Cano failed to affect her removal from the property as both the owner and state law required, it was reasonable for Deputy Vickery to believe a violation of Texas Penal Code 30.05, Criminal Trespass, had occurred in his presence hence he was fully authorized by the Texas Code of

Criminal Procedure to affect Plaintiff Cano's arrest."[35]  Cano does not dispute the substance of

Coons' testimony other than to assert, in a conclusory fashion, that he is biased because he works

for Harris County.  Because Cano fails to point to evidence to raise a fact issue that it was

objectively unreasonable for Vickery or Katrib to believe that they had probable cause to arrest

her for criminal trespass, she does not overcome Vickery's and Katrib's assertions of qualified

immunity for her Fourth and Fourteenth Amendment claims.

**B.      First Amendment Claims Against Vickery and Katrib**

Cano further claims that the Defendants retaliated against her in violation of her First

Amendment right to free speech because they asked her to apologize for her conduct after she

was in the sheriff's vehicle under arrest, but she refused.

A plaintiff alleging a First Amendment retaliation claim outside of the government

employee context must show that (1) she was engaged in constitutionally protected activity; (2)

the defendants' actions caused her to suffer an injury that would chill a person of ordinary

firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were

substantially motivated against her exercise of constitutionally protected speech.  *Keenan v.*

*Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).  A retaliation claim requires some showing that the

plaintiff's exercise of free speech has been curtailed.  *Id.* at 259 (citing cases).

Cano relies on *Brooks v. City of West Point, Mississippi*, 639 F. App'x 986, 989 (5th Cir.

2016), to support her position that Katrib and Vickery retaliated against her for failing to

apologize for using abusive language towards Vickery at the bar.  *Brooks* is readily

distinguishable from this case, however, because the officer in *Brooks* lacked probable cause to

arrest the plaintiff for disorderly conduct.  *Id.* at 989.  Brooks had called the police to his home

and became upset and cursed at the responding officer when the officer told him that Brooks

---

[35] Affidavit of Jay O. Coons ("Coons Aff."), [Doc. No. 22-4], at 12-13.

could not press charges immediately against his sister for her harassing phone calls. *Id.* at 987. Brooks did not make any threatening, combative, or other overt gesture towards the responding officer, but, "*solely because of the words he used,*" which were not "fighting words," the officer told him he would be arrested for disorderly conduct. *Id.* at 989 (emphasis added).

In contrast to the scenario in *Brooks*, Cano was charged with criminal trespass because she failed to depart when the bar announced that it was closed and after she was told repeatedly to leave. Unlike the police officers in *Brooks*, Vickery and Katrib had probable cause, or reasonably believed they had probable cause, to arrest Cano for her ***conduct***, not her speech. "If [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment." *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008). The Fifth Circuit has noted that, even where a citizen believes that she has been subject to a retaliatory detention or arrest, if there was reasonable suspicion or probable cause for an officer to seize the citizen, "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Keenan,* 290 F.3d at 261–62.

In that respect, Cano does not meet her burden to overcome Vickery's and Katrib's assertions of qualified immunity for her First Amendment claim because she does not show that it was clearly established in February 2014 that she had a right to be free of retaliatory arrest when that arrest was supported by probable cause. *See Ashcraft v. City of Vicksburg*, 561 F. App'x 399, 401 (5th Cir. 2014) (holding that the plaintiff "has not demonstrated that she had a clearly established 'right' to be free from a retaliatory arrest that was otherwise supported by probable cause"). The Supreme Court made clear in *Reichle v. Howards*, 566 U.S. 658 (2012), and again in *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018), that such a right is not

clearly established. *See Reichle*, 566 U.S. at 664-69 ("This Court has never recognized a First

Amendment right to be free from retaliatory arrest that is supported by probable cause. . .

[arresting officers] are thus entitled to qualified immunity."); *Lozman*, 138 S. Ct. at 1954

("[W]hether in a retaliatory arrest case [suit should be barred] where probable cause exists . . .

must await a different case."). Accordingly, because neither Vickery nor Katrib violated a First

Amendment right of the plaintiff that was clearly established when they arrested Cano in

February 2014, they are entitled to qualified immunity with respect to Cano's First and

Fourteenth Amendments claims for retaliatory arrest.

## C.     Claims against Harris County

Cano also brings claims against Harris County, alleging that its policy to allow its

deputies to work in off-duty jobs, or its failure to train its deputies, caused her constitutional

harm.

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipalities like

Harris County may be liable for damages under § 1983 for violations of federal constitutional or

statutory law inflicted pursuant to a government policy or custom. *See City of Oklahoma City v.

Tuttle*, 471 U.S. 808, 810 (1985). To establish municipal liability under § 1983, a plaintiff must

submit evidence to show (a) a policymaker, (b) an official policy [or custom or widespread

practice], and (c) a violation of constitutional rights whose "moving force" is the policy or

custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.), *cert. denied*, 534 U.S. 820

(2001) (a plaintiff must show that the unconstitutional conduct is attributable to the municipality

through some official custom or policy that is the "moving force" behind the constitutional

violation) (*citing Monell*, 436 U.S. at 694).

To establish liability for failure to train, a plaintiff must show that: "(1) the supervisor

either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Mesa*, 543 F.3d at 274 (internal quotation marks and citation omitted). "Deliberate indifference is a conscious choice to endanger constitutional rights." *Id.* (citations and internal quotation marks omitted). The Supreme Court has noted that "[a] municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Tuttle*, 471 U.S. at 822-23).

To satisfy deliberate indifference, the plaintiff must "usually must demonstrate a pattern of violations" and show that the defendant's actions were "obviously likely to result in a constitutional violation." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations and internal quotation marks omitted); *see also Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (holding that a plaintiff alleging failure to train generally must demonstrate a pattern of similar violations). Even numerous incidents may not constitute a pattern to hold a municipality liable for failure to train or custom. *See e.g., Connick*, 563 U.S. at 62 (four other overturned convictions due to *Brady* violations did not put the county on notice of a failure to train); *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-52 (5th Cir. 2009) (holding that 27 incidents of excessive force between 2002 and 2005 did not suggest a pattern so common that it constituted a custom).

Further, in order to show a custom or a failure to train, "the governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom." *Okon v. Harris County Hosp. Dist.*, 426 F. App'x 312, 316 (5th Cir. May 23, 2011) (unpublished op.) (citing *Bennett v. City of Slidell*, 735

F.2d 861, 862 (5th Cir. 1984) (en banc)). If policymakers do not have notice that a source of training is deficient in a specific respect, they "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick,* 563 U.S. at 62.

Here, Cano submits no evidence that the practice of allowing deputies to work off-duty jobs was the moving force of any constitutional violation. As discussed previously, the deputies had probable cause to arrest her; she cannot show that Harris County's policy or custom caused her harm under these circumstances. Further, she does not raise a fact issue that there were a pattern of violations or that any official policymaker had actual or constructive knowledge that there was a deficit in training that was the moving force of a constitutional violation. Therefore, Cano's *Monell* claims against Harris County fail on the merits.

In addition, "neither *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (per curiam). Having found that the First, Fourth, and Fourteenth Amendment claims against Deputies Vickery and Katrib fail as a matter of law, there can be no *Monell* liability with respect to those claims because there is no underlying constitutional violation. *Id.* Thus, Harris County is also entitled to summary judgment on all of Cano's claims.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.    The motion for summary judgment filed by Defendants Harris County, Deputy Jeffery Vickery, and Ben Katrib [Doc. No. 22] is **GRANTED**, and the claims against them are **DISMISSED** with prejudice.

2.    The motion for summary judgment filed by Plaintiff Brittany Cano [Doc. No. 23] is

**DENIED.**

3.      The case is **DISMISSED with prejudice**.  A separate final judgment shall issue.

The Clerk shall provide a copy of this Memorandum and Order to all parties of record.

SIGNED at Houston, Texas, this _____ day of September, 2018.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE